UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **United States of America,**      ) | |
| ) | No. **CR 10-707-TUC-DCB** |
| Plaintiff,      ) | |
| ) | |
| vs.      ) | Tucson, Arizona |
| ) | March 14, 2011 |
| **Fernando Delgado-Ornelas,**      ) | |
| ) | |
| Defendant.      ) | |
| _____ ) | |

**BEFORE:   THE HONORABLE DAVID S. DOTY JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**SENTENCING**

**APPEARANCES:**
For the Plaintiff:
    U.S. Attorney's Office
    By:  **Erica McCallum**, Esq.
    405 West Congress Street, Suite 4800
    Tucson, Arizona 85701

For the Defendant:
    U.S. Attorney's Office Tucson
    By:  **Jennifer Jean Maldonado**, Esq.
    405 West Congress Street, Suite 4800
    Tucson, Arizona 85701

Spanish Interpreter:  Laura Garcia-Hein

Transcriptionist:
Candy L. Potter
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

```
 1              THE COURT:  The matter on our calendar this morning is
 2   that of United States versus Fernando Delgado-Ornelas.
 3              May I have appearances, please?
 4              MS. MCCALLUM:  Good morning, Your Honor, Erica
 5   McCallum appearing on behalf of the United States.
 6              THE COURT:  Good morning.
 7              MS. MALDONADO:  Good morning, sir, Jennifer Maldonado
 8   appearing on behalf of Mr. Fernando Delgado-Ornelas, who is
 9   present in custody and is being assisted by the Spanish
10   interpreter who is appearing telephonically.
11              THE COURT:  Good morning.
12              Why don't you come on up to the podium.
13              And, Miss Maldonado, I know that you had a chance to
14   read the presentence report.  Have you had a chance to go over
15   that with Mr. Delgado?
16              MS. MALDONADO:  Yes, I have, sir.
17              THE COURT:  And any issues about it at all?
18              MS. MALDONADO:  There is one issue that we'd like to
19   bring to the Court.  It does not change any calculations.
20              But in paragraph 23 there indicates a conviction of
21   some sort of possession of depressants, stimulants,
22   hallucinogens or steroids, which was listed as a misdemeanor in
23   Kansas.  In going over the presentence report with Mr. Delgado,
24   he indicated that he doesn't have any recollection of that.  He
25   doesn't think that was him.
```

1        And it indicates here that court documents had not
2   been received.  So we did not have the opportunity to review
3   those with him to see if that refreshed his memory.
4        Two points were assessed for this, but given the
5   calculations in the sentencing table, even if we were to give
6   him the benefit of the doubt and say that was not him, that
7   would reduce his Criminal History Category points to 7, which
8   would still leave him in a Category IV.  And, therefore, would
9   not change the actual calculations.
10       THE COURT:  Well, and I think you've now made a
11  record.  Is that sufficient for your purposes and Mr. Delgado's
12  purposes?
13       MS. MALDONADO:  Yes, sir.
14       THE COURT:  Are you hearing me all right?
15       MS. MALDONADO:  It's a little faint.
16       THE COURT:  I'm wondering if I get closer it's better.
17  Okay.
18       MS. MALDONADO:  That is better.
19       THE COURT:  Okay.  Back home in Minnesota, where we
20  come from, the microphones are a little more sensitive, so I
21  have a big voice and sometimes it gets too big.  But I was not
22  hearing any feedback myself, and that's why I asked that
23  question.
24       Any other issues with the presentence report?
25       MS. MALDONADO:  No, sir.

1        THE COURT: Okay. Do you have anything you'd like to
2   say on behalf of Mr. Maldonado (sic) as far as allocution?
3        MS. MALDONADO: Yes. On behalf of Mr. Delgado, sir --
4        THE COURT: Go ahead. I'm sorry.
5        MS. MALDONADO: That's okay.
6        Mr. Delgado has been extremely cooperative and polite
7   and understanding of my attempts to assist him in this case.
8   Unfortunately he's in a situation that is really, really
9   difficult, and we see way too often, which is that he has
10  children who live here in the United States and who are now
11  living with extended family here in the United States.
12       And although he does have this prior drug trafficking
13  conviction from 2002, which raises him up to the level 24
14  offense level for an illegal reentry, he's needing to come back
15  as a father. He needs to be here with his children.
16       And, of course, one could always say, well, why don't
17  you just take the children to Mexico? It seems like an easy
18  solution when you're not the person and the one living in
19  Mexico and living through the economic difficulties and the
20  poor educational systems that exist there.
21       So he's trying to do what's best for his children by
22  allowing them to remain here with extended family and receive
23  better opportunities than he was able to receive as a child.
24  But it's very difficult as a father to do that.
25       He's also indicated to me that his children have some

1  health issues, and that makes it even more important for him to
2  want to be there with them, and to make sure that those issues
3  are being taken care of properly, and that he can spend as much
4  time with them as possible in case those health issues end up
5  getting more serious.
6            You can see by looking through his criminal history
7  that although he does have obviously some criminal history,
8  which puts him in a Category IV, none of them appear to be
9  related to illegal entries or illegal reentries.
10           And it's really, really difficult for somebody to
11 understand why you get 48 months in prison for basically
12 trafficking in methamphetamine and selling to an undercover
13 detective.  That seems so, so egregious, that conduct.  And
14 then simply crossing the border with no drugs, with no weapons,
15 with no intent to do anyone any harm, simply to come back to be
16 a man, to be a father, and to be with his family, how he's
17 looking at even more time than he did for selling
18 methamphetamine to a cop.  It just doesn't make sense.
19           And I've tried as hard as I can to explain the way
20 that the U.S. laws work with regard to the Immigration law
21 here, why the sentence is as high it is for somebody who has a
22 drug trafficking conviction of this nature, and that it's
23 supposed to teach him that he's not supposed to come back again
24 in the future or it will just continue to get worse.
25           I don't know whether -- whether having his kids here

1   in the United States is going to stop anyone from coming back,
2   no matter how much time they get, as a parent.
3          But certainly with his lack of criminal immigration
4   history, his lack of prior understanding that crossing the
5   border could subject him to this amount of time, we do request
6   that you follow the recommendation of the probation department
7   by giving him the minimum in his plea offer, which is 46
8   months.
9          He also does request that he be designated to a Bureau
10  of Prisons facility in Kansas, or somewhere nearby, so that his
11  family in Salina, Kansas can visit him as often as possible,
12  including his children.
13         And I think that he also would like to make some
14  statements to the Court.
15         THE COURT:  Is there a facility in Kansas in which he
16  might be put into custody?
17         MS. MALDONADO:  To be honest, sir, I don't know.  I
18  think the --
19         THE COURT:  Well, Leavenworth is there, but I'm not
20  sure he would get that high yet with that.
21         We'll recommend Kansas.
22         MS. MALDONADO:  Okay.  Thank you.
23         THE COURT:  See what happens.  I find the Bureau of
24  Prisons generally doesn't follow what the judge recommends
25  anyway, but we'll do that just to see if it works.

1          Mr. Delgado, you have an opportunity to address the
2   Court also if you wish.  Anything you'd like to say is fine.
3          THE DEFENDANT:  Yes, Your Honor.  I would like first
4   of all to apologize for having come back to the country
5   illegally.  I know that having done that -- I only did it
6   because it was a thing -- an emergency.  I don't know if my
7   attorney told you, but I received a letter telling me that my
8   grandmother had passed away from cancer.  And I had to come
9   because I grew up with her.  Well, since I grew up with her,
10  that's why I came back here.
11         When I came back here I was picked up.  My children
12  came over here, and they came to stay with my parents -- with
13  my father.  When I was taken to jail my children were staying
14  here with my father.  But then my father was diagnosed with
15  Parkinson's disease.
16         And also my children are sick.  One of my children
17  suffers from depression.  And then the other two are seeing a
18  psychologist.  And I also have a two-year-old daughter.
19         So, Your Honor, for all these reasons I would ask of
20  you to please give me the minimum possible penalty.  I again
21  apologize for having come back to the country illegally.
22         And what I would like if at all possible would be to
23  go to Mexico as soon as possible, to complete my sentence, sent
24  back to Mexico as soon as possible, and take my children over
25  there.

1            Thank you very much, Your Honor, for giving me the
2    opportunity to talk to you.  And God bless you.
3            THE COURT:  All right.  And thank you.
4            You should also know that I have read your letter and
5    the other letters that I received from others concerning your
6    situation.  So I've read those and I'm aware of that also.
7            Ms. McCallum, on behalf of the Government.
8            MS. MCCALLUM:  Your Honor, I concur with the findings
9    in the presentence report.
10           And just as a practical matter, this defendant was on
11   supervised release for his prior drug trafficking conviction at
12   the time he was arrested on this offense.  His Plea Agreement
13   incorporates -- has a bit of a bump in the sentence to take
14   that into account.
15           And it also states that -- this is on page 3, that the
16   defendant agrees that the term of supervised release originally
17   imposed shall be unsuccessfully terminated as part of this
18   proceeding.
19           THE COURT:  All right.  Thank you.
20           Well, as you know there were no objections to the
21   factual statements contained in the Presentence Investigation
22   Report.  And because of that fact the Court will adopt those
23   statements as its findings of fact.
24           As to the application of the Guidelines to the facts,
25   there were no objections to the probation officer's

1    calculations as to the Guidelines.  And the Court will adopt
2    those conclusions and determine that the applicable guidelines
3    are as follows:
4            Total offense level of 21, which might lead to -- with
5    a Criminal History Category of IV, which would lead to an
6    imprisonment range of 57 to 71 months.  Supervised release of
7    two to three years.  A fine range of 7500 to $75,000.  And a
8    special assessment of $100.
9            Now the applicable statutes establish a maximum term
10   of imprisonment of 20 years, a maximum term of supervised
11   release of three years, and a maximum fine of $250,000.
12           The Court has found, however, that a downward
13   departure of two levels is warranted under the guideline
14   section 57 -- 5K3.1.  And therefore, the adjusted guideline
15   range is 46 to 57 months imprisonment.
16           Mr. Delgado-Ornelas, you have been charged in the
17   Indictment with reentry after deportation, in violation of
18   8 United States Code Section 1326, enhanced by 8 United States
19   Code Section 1326(b)(2).  And that's a Class C felony.
20           And based upon your plea of guilty to that charge, it
21   is considered and adjudged that you are guilty of that offense.
22   Therefore, it is adjudged that you are committed to the custody
23   of the United States Bureau of Prisons for imprisonment for 46
24   months.
25           As requested, I will recommend that you serve that

1  time in Kansas or as nearby Kansas as possible.
2           Further, it is hereby ordered that pursuant to 18
3  United States Code Section 3583, you're to serve a term of
4  supervised release of three years under the following
5  conditions:
6           First, you shall abide by the standard conditions of
7  supervision adopted by this Court.  That is in General Order
8  05-36.
9           And of particular importance, you shall not commit
10 another federal, state or local crime during the term of your
11 supervision.
12          Second, you shall not reenter the United States
13 without legal authorization.
14          No fine will be imposed.  However, pursuant
15 to -- pursuant to a particular statute you must pay $100
16 special assessment, which is due immediately.  You can
17 also deal with and shall be made under the Bureau of Prisons
18 Inmate Financial Responsibility Program at a rate of not less
19 than $25 per quarter.
20          The Court hereby waives the imposition of interest and
21 penalties on any unpaid balance.
22          The Court finds that a two-level departure under
23 Section 5K3.1, based on an early disposition program is
24 warranted.  The savings derived by the Government through a
25 nontrial disposition, given the extraordinarily large number of

1  these cases, together with a limited number of judicial
2  officers is a unique feature unaccounted for by the Guidelines.
3              Furthermore, the Court finds that a sentence of 46
4  months is appropriate and reasonable in light of the
5  considerations set forth in 18 United States Code Section
6  3553(a).
7              No fine will be imposed because of defendant's
8  inability to pay a fine.
9              And for those same reasons the defendant will not be
10 able to pay the costs of his incarceration or supervised
11 release.
12             Further, pursuant to the Plea Agreement, supervision
13 in case number 10 CR 50144-0010 is hereby terminated.
14             Now, Mr. Delgado-Ornelas, in the Plea Agreement you
15 gave up your right to appeal your sentence in the event the
16 Court accepted the Plea Agreement and sentenced you according
17 to its terms.  And the Court has done that now.
18             Anything else that should come before the Court in
19 this matter?
20             MS. MALDONADO:  No, Your Honor.
21             MS. MCCALLUM:  No, Your Honor.
22             THE COURT:  All right.  Thank you.
23             The Court's going to stand in recess until 9:45.
24
25                              -oOo-

1
2
3
4                          C E R T I F I C A T E
5
6          I, CANDY L. POTTER, court-approved transcriber,
7    certify that the foregoing is a correct transcript from the
8    official electronic sound recording of the proceedings in the
9    above-entitled matter.
10
11         DATED at Phoenix, Arizona, this 28th day of December,
12   2011.
13
14
15
16
                                     s/Candy L. Potter__
17                                   Candy L. Potter
18
19
20
21
22
23
24
25